SO ORDERED.

SIGNED this 6 day of February, 2017.

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____


# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

IN RE:

DENNIS P. SORGE,

    Debtor

-----------------------------------------------------------

FEDERAL INSURANCE COMPANY,
GREAT NORTHERN INSURANCE COMPANY,
and PACIFIC INDEMINTY COMPANY,
    Plaintiffs

   v.

DENNIS P. SORGE,
    Defendant
-----------------------------------------------------------

Case No.:
16-04142-5-JNC
Chapter 11

Adversary Proceeding No.:
16-00168-5-JNC

## ORDER REGARDING DEFENDANT'S MOTION
## TO DISMISS ADVERSARY PROCEEDING

    The matter before the court is the Defendant Dennis P. Sorge's Amended Motion to Dismiss the complaint filed by Federal Insurance Company, Great Northern Insurance Company, and Pacific Indemnity Company (collectively, "Federal"), pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, Dkt. 9. A hearing took place on January 12, 2017 in Greenville, North Carolina.

Mr. Sorge filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 9, 2016. Federal filed the complaint in this adversary proceeding on November 7, 2016, seeking a determination that Mr. Sorge's debt owed to Federal should be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4), that certain property is held by Mr. Sorge in constructive trust for the benefit of Federal, and that certain property is neither exempt nor property of the estate. Dkt. 1. The complaint was amended on November 9, 2016, to correct a typographical error. Dkt. 3. Mr. Sorge filed a motion to dismiss the adversary proceeding on November 15, 2016, Dkt. 4, and an amended motion to dismiss on November 22, 2016, Dkt. 9. Mr. Sorge also filed a memorandum in support of the motion on November 18, 2016. Dkt. 7. Federal filed its opposition to the motion on December 15, 2016, Dkt. 19, and Mr. Sorge filed a reply brief on December 27, 2016, Dkt. 21.

## BACKGROUND

Mr. Sorge was previously employed by Federal as a property claims adjuster. Dkt. 3 at ¶ 15. Federal contends that during his employment from March 1, 2005 to August 2011, Mr. Sorge made recommendations to his superiors that resulted in payments of millions of dollars to settle insurance claims assigned to him. Federal maintains that Mr. Sorge was a fiduciary who owed Federal a duty of utmost loyalty. Dkt. 3 at ¶ 15-16. Federal further contends that "[b]etween 2005 and 2011, [Mr.] Sorge routinely authorized and/or recommended claim payments on the basis of fraudulent repair estimates prepared by Paul H. Mertz and The Mertz Company . . . who were then consultants assisting Federal in the adjustment of those claims," Dkt. 3 at ¶ 18, while Mr. Sorge concealed from Federal "that Mertz and The Mertz Company were acting both as Federal's building consultant and the insured's repair contractor." Dkt. 3 at ¶ 22.

2

Federal filed a civil action against Mr. Sorge, Mr. Mertz, and The Mertz Company in the United States District Court for the Southern District of New York, *Federal Insurance Co., et al. v. Paul H. Mertz, Jr., et al.*, 12-cv-1597-NSR (the "New York Action"). Dkt. 3 at ¶ 2. The complaint alleged causes of action for fraud, breach of fiduciary duty, faithless servant, and unfair and deceptive acts and practices under Connecticut law with respect to eight customer claims submitted to and paid by Federal. Dkt. 3 (Ex. A) at 18-65. A jury returned a verdict in the New York Action on July 8, 2016, Dkt. 3 (Ex. B) at 66-97, approximately one month before Mr. Sorge filed his chapter 11 petition. On October 14, 2016, the parties entered a stipulation lifting the automatic stay for the purpose of allowing the district court judge in the New York Action to enter a judgment on the verdict, although the parties now disagree as to the scope of the modification of the stay.[1] Case No. 16-04142-5-JNC, Dkt. 51. As of the date of this order, the judgment has not yet been entered. On January 25, 2017, however, the district court entered a Stipulation and Order in the New York Action concluding that the jury's findings established liability of Mr. Sorge to Federal under the "faithless servant doctrine," and that the period of faithlessness ran from March 1, 2005 to Mr. Sorge's retirement in August 2011, during which time Mr. Sorge's compensation from Federal was $851,883.58 (the "New York Order"). On January 27, 2017, Federal filed an Emergency Motion for Supplemental Order Lifting the Automatic Stay, Case No. 16-04142-5-JNC, Dkt. 102, seeking additional relief to allow entry of final judgment on the verdict in the New York Action. That motion is set for hearing before this court on February 7, 2017.

---

[1] The stipulation provided that "the automatic stay shall be modified solely to permit the Action to proceed and to permit Federal to pursue entry of judgment and assessment of costs against the Debtor in connection with the Action." Case No. 16-04142-5-JNC, Dkt. 51 at ¶ 3. The question of the scope of the stay relief is not presently before this court.

The jury verdict form rendered in the New York Action, attached as Exhibit B to the Amended Complaint, shows the following jury findings with respect to Mr. Sorge:

> Berlin Claim
> > Fraud: No
> > Breach of Fiduciary Duty: Yes
> > Damages: $328,358.77
>
> Fuller Claim
> > Fraud: No
> > Breach of Fiduciary Duty: Yes
> > Damages: $536,076.74
>
> Iddison Claim
> > Fraud: Yes
> > Damages: $1,432,513.81
>
> McAlley Claim
> > Fraud: No
> > Breach of Fiduciary Duty: Yes
> > Damages: $699,107.66
>
> Talbot Claim
> > Fraud: No
> > Breach of Fiduciary Duty: Yes
> > Damages: $262,298.59
>
> Palaia Claim
> > Fraud: No
> > Breach of Fiduciary Duty: Yes
> > Damages: $559,613.24
>
> Hostetter Claim
> > Fraud: No
> > Breach of Fiduciary Duty: No
>
> Snow Claim
> > Fraud: No
> > Breach of Fiduciary Duty: No

Dkt. 3 (Ex. B) at 66-96. Federal's claims for violation of the Connecticut Unfair Trade Practices Act were not submitted to the jury with respect to Mr. Sorge. *Id.* at 97. According to Federal, the amount of the damages as of the petition date, inclusive of prejudgment interest, totals over $2.7 million for the Iddison Claim on which the jury found fraud (defined in the Amended Complaint as the "Fraud Debt"), and over $5.0 million for the five claims on which the jury found breach of fiduciary duty (defined in the Amended Complaint as the "Fiduciary Debt"). Dkt. 3 at ¶ 28.

The Amended Complaint includes the following claims for relief:

Count I: Fraud Debt Not Dischargeable, 11 U.S.C. §§ 523(a)(2), (a)(4)
Count II: Fiduciary Debt Not Dischargeable, 11 U.S.C. § 523(a)(4)
Count III: Constructive Trust Contingent Upon the District Court's Actions
Count IV: Non-Exempt Assets

Dkt. 3. Mr. Sorge's motion seeks dismissal of all counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that even if all of the facts as pled in this action are true, Federal cannot prevail as a matter of law. At the hearing, the parties agreed that dismissal of Counts III and IV[2] could not be considered until the district court entered its order with respect to the "faithless servant" doctrine in the New York Action. The New York Order was subsequently entered on January 25, 2017. As a result, this court can now rule on the motion to dismiss with respect to Counts III and IV as well.

## DISCUSSION

### A.    The Standard for Dismissal Pursuant to Rule 12(b)(6).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Rule 12(b)(6), all allegations of fact contained in a complaint

---

[2] Count III seeks a determination, "to the extent not addressed by the District Court in the New York Action," that Mr. Sorge holds in constructive trust for the benefit of Federal his compensation from March 1, 2005 through 2011, all income, interest, profits, dividends or things of value derived from or traceable to his compensation from March 1, 2005 through 2011, and any other "ill-gotten gains." Dkt. 3 at ¶¶ 49-52. Similarly, Count IV seeks a determination that any assets held in constructive trust under Count III or as determined by the district court in New York are not property of the estate and are not subject to any exemptions under the Bankruptcy Code or North Carolina law. Dkt. 3 at ¶¶ 54-56.

5

must be accepted as true. *E.I. du Pont de Nemours &Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court of the United States held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Court elaborated in *Ashcroft v. Iqbal* that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." 129 S. Ct. 1937, 1949 (2009); *see also Adcockv. Freightliner, LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (mere legal conclusions do not warrant automatic assumption of truth by the court). The allegations must be more than a "formulaic recitation of the elements" of a claim. *Iqbal,* 129 S. Ct. at 1951.

A claim has facial plausibility when the plaintiff pleads enough "factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554 (4th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949. Thus, dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat the plaintiff's claims.

### B.    Count I: Fraud Debt Not Dischargeable, 11 U.S.C. §§ 523(a)(2), (a)(4)

The jury found that Mr. Sorge was liable to Federal for fraud with respect to the Iddison Claim in the amount of $1,432,513.81, Dkt. 3 (Ex. B) at 75-76, which amount plus asserted interest

6

constitutes the Fraud Debt. In Count I, Federal seeks a determination that the Fraud Debt is excepted from discharge pursuant to §§ 523(a)(2) and 523(a)(4) of the Bankruptcy Code.

Section 523(a)(2) excepts from discharge a debt "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Mr. Sorge contends that although the jury verdict is for "fraud," the debt is not one for "money . . . obtained by false pretenses . . . or . . . fraud." Specifically, Mr. Sorge contends that the Amended Complaint contains no allegation that he obtained any money by false pretenses, as the jury finding was that Mr. Sorge "'overpaid on claims,' not that he received any illicit compensation for doing so." Dkt. 7 at 8.

With respect to the § 523(a)(2)(A) claim, as noted from the bench, the court finds that Federal has pled sufficient facts in the Amended Complaint to state a plausible claim for relief. At this stage of the litigation, the court cannot determine as a matter of law that no set of facts exists that would entitle Federal to a finding that the damages for fraud are nondischargeable, and the allegations contained in the complaint, if proven true, would likely result in an exception to discharge for at least part of the Fraud Debt. The statute does not require that the nondischargeable debt be founded in both false pretenses *and* fraud, but instead is disjunctive as either false pretenses *or* fraud of sufficient level or degree is enough. Assuming no appeal is taken in the New York Action, the specific fraud finding by the jury on the Iddison Claim is binding in the bankruptcy case, and Federal is entitled to proceed with its showing, subject to any defenses remaining to Mr.

7

Sorge, that the "type" of fraud found by the jury fits within the confines of "actual fraud" as contemplated in § 523(a)(2)(A).[3]

Claim I also contends that the Fraud Debt is excepted from discharge under § 523(a)(4), which provides that a debt "(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is excepted from discharge. The Amended Complaint alleges that the Fraud Debt is nondischargeable "because Sorge committed his fraud in a fiduciary capacity." Dkt. 3 at ¶ 40. As explained more fully below, the meaning of the term "fiduciary" under the Bankruptcy Code, and specifically for purposes of § 523(a)(4), is not the same as the term under state law or for purposes of common law breach of fiduciary duty or constructive fraud claims. The jury verdict form shows that breach of fiduciary duty (as to Mr. Sorge) was not submitted to the jury on the Iddison Claim from which the Fraud Debt arises.[4] Dkt. 3 (Ex. B) at 76.  No facts establishing a fiduciary capacity as that term is construed under the Bankruptcy Code for the Fraud Debt have been pled. Accordingly, and for the same reasons as set forth below, the portion of Claim I seeking exception of the Fraud Debt from discharge pursuant to 11 U.S.C. § 523(a)(4) is dismissed.

---

[3] The Supreme Court recently held that the term "actual fraud" in the context of 11 U.S.C. § 523(a)(2) requires proof of more than just "fraud" standing alone, as the defendant's "wrongful intent" must also be shown. *Husky International Electronics, Inc. v. Ritz*, -- U.S. --, 136 S. Ct. 1581, 1586, 194 L. Ed. 2d 655 (2016). The Court explained,

> The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal* v. *Clark*, 95 U.S. 704, 709 (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid.* Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

*Id.*

[4] The Amended Complaint lists damages for the Iddison Claim as "Fraud $1,432,513.81" and "Breach of Fiduciary Duty $545,506.79;" however, the verdict form shows that the breach of fiduciary duty claim was submitted to the jury only as to the Mertz defendants, and not Mr. Sorge, because the jury was to consider whether Mr. Sorge breached a fiduciary duty to Federal with respect to the Iddison Claim only if it did not find fraud as to that claim. Dkt. 3 (Ex. B) at 76. Thus, the damages of $545,506.79 for breach of fiduciary duty relate only to the Mertz defendants, who are not parties to this adversary proceeding.

### C.    Count II: Fiduciary Debt Not Dischargeable, 11 U.S.C. § 523(a)(4)

The jury found that Mr. Sorge owed and breached his fiduciary duty to Federal with respect to the Berlin Claim, the Fuller Claim, the McAlley Claim, the Talbot Claim, and the Palaia Claim, and calculated total damages (before interest) arising from the breaches of fiduciary duty at $2,930,961.79. Dkt. 3 (Ex. B). In Count II, Federal seeks a determination that this portion of its claim is excepted from discharge pursuant to § 523(a)(4), as he was acting in a fiduciary capacity and his misconduct "constitutes a defalcation and/or embezzlement." Dkt. 3 at ¶¶ 44, 46.

#### 1.    Defalcation While Acting in a Fiduciary Capacity

Federal's specific allegations with respect to Mr. Sorge's fiduciary role include the following (as paraphrased):

- For more than thirty years, Sorge was a trusted Federal employee. Dkt. 3 at ¶ 15.

- Between March 1, 2005 and August 2011, Sorge was a General Adjuster, a designation for Federal's most senior property claims adjusters. Dkt. 3 at ¶ 15.

- As a General Adjuster, Sorge had substantial involvement and authority with respect to the adjustment and payment of these claims. Dkt. 3 at ¶ 15.

- If a claim was within Sorge's authority, which was $500,000 and then $1 million during the relevant period, he could settle it without further approval. Dkt. 3 at ¶ 16.

- If a claim exceeded Sorge's authority, payment had to be approved by a higher ranking employee; however, Federal relied on Sorge to determine . . . the fair amount Federal should pay to settle covered losses, and his reports and recommendations were the basis upon which Federal paid millions of dollars to settle claims that were assigned to Sorge. Dkt. 3 at ¶ 16.

- By virtue of his trusted position as a general adjuster with the authority to control, recommend and/or influence the distribution of millions of dollars in property damage claim payments, Sorge was a fiduciary. Dkt. 3 at ¶ 43.

9

- Sorge knowingly, intentionally and improperly authorized, recommended and/or influenced the payment of millions of dollars to settle fraudulent insurance claims payments by Federal. Dkt. 3 at ¶ 44.

In addition, the Amended Complaint alleges that the jury charges with respect to the fiduciary duty claim summarizing Federal's contentions included that Mr. Sorge –

(1) adjusted the insurance claims involved in this case in a dishonest manner,

(2) made material false and fraudulent statements to and concealed material facts from Plaintiffs concerning the insurance claims involved in this case, and

(3) authorized, recommended or facilitated claim payments on the basis of fraudulent estimates knowing that estimates were fraudulent and that the Mertz Defendants would profit from those payments.

Dkt. 3 at ¶ 26.

A finding of the existence and breach of fiduciary duty under state law does not result in an automatic exception to discharge in bankruptcy cases. The term "fiduciary" is more narrowly construed for § 523(a)(4) discharge purposes than under most state laws. "Case law makes clear that the broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context. . . . Instead, § 523(a)(4) nondischargeability results only where, among other things, the fiduciary relationship between the debtor and the creditor arises in relation to an express or technical trust that pre-dates the alleged defalcation." *Pemstein v. Pemstein (In re Pemstein)*, 492 B.R. 274 (9th Cir. BAP 2013) (internal citations omitted). *See also Edwards v. Emberton (In re Emberton)*, 501 B.R. 392, 398 (Bankr. D. Colo. 2013) (the term "fiduciary," as used in § 523(a)(4), has a narrow meaning, and neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between parties' knowledge or bargaining power, is sufficient to establish a fiduciary relationship for dischargeability purposes).

Thus, the broad, general definition of "fiduciary" relationship commonly applying under state law as involving just confidence, trust, and good faith is inapplicable in a § 523(a)(4) dischargeability proceeding, where for a debtor to stand in a "fiduciary capacity" to a creditor, the parties must share an express or technical trust relationship. A mere employment relationship is not enough to establish a fiduciary capacity for purposes of § 523(a)(4). *See Braden Trust v. Chavez (In re Chavez)*, 430 B.R. 890 (Bankr. D. Ariz. 2010) (chapter 7 debtor, in his capacity as managerial employee whose employment contract obligated him to "well and faithfully" serve his employer, but who never achieved status of officer, member, partner or the like, did not stand in "fiduciary capacity" to employer, and debt arising from his misappropriation of hundreds of thousands of dollars could not be excepted from discharge, at least not on "fiduciary fraud or defalcation" theory). Nor does the New York Order's finding of faithless servant, standing alone, mandate a finding of defalcation while serving in a fiduciary capacity. In *Nagel Precision Inc. v. RND Eng'g, LLC (In re RND Eng'g, LLC)*, 546 B.R. 738, 784 (Bankr. E.D. Mich. 2016), the court found the debtor to be a faithless servant, but did not find the debt was excepted from discharge under § 523(a)(4). There, the plaintiff sought a determination only that the debt was for embezzlement under § 523(a)(4), but as that court noted, even if the plaintiff had not so limited its claim for relief, no express trust existed under the facts of that case:

> One type of debt that is nondischargeable under § 523(a)(4) is a debt for fraud or defalcation while acting in a fiduciary capacity and larceny. Nagel did not plead either of these theories. Count III of Nagel's complaint pled a breach of fiduciary duty by Digue under Michigan law, but that is not the same as pleading defalcation while acting in a fiduciary capacity for purposes of § 523(a)(4). "The question of who is a fiduciary for purposes of § § 523(a)(4) is one of federal law." *Abdel–Hak v. Saad (In re Saad),* 319 B.R. 147, 155 (Bankr. E.D. Mich.2004) (citing *Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249, 251 n.2 (6th Cir. 1982)). The Sixth Circuit limits a fiduciary relationship for purposes of § § 523(a)(4) to a "pre-existing fiduciary relationship," *Patel v. Shamrock Floorcovering Services,*

11

> *Inc. (In re Patel),* 565 F.3d 963, 968 (6th Cir. 2009), and to "express or technical trusts." *In re Johnson,* 691 F.2d at 251.
>
> Nagel did not plead nondischargeability based on fraud or defalcation while acting in a fiduciary capacity, but even if it had, the proofs do not demonstrate the existence of an express trust as required by the Sixth Circuit.

546 B.R. at 784, n.16.

Consistent with these cases, this district has long applied the narrow reading of 523(a)(4), requiring a statutory, express, or technical trust.

> The term "fiduciary" as used in § 523(a)(4) is restricted to "the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors or public officers, and, absent special considerations, does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners."

*Martel v. Zeitler (In re Zeitler)*, 213 B.R. 457, 461 (Bankr. E.D.N.C. 1997) (quoting *Harmon v. Scott (In re Scott)*, 203 B.R. 590, 596-97 (Bankr. E.D. Va. 1996) (citations omitted)). Fiduciary, for purposes of this exception, "'is limited to instances involving express or technical trusts.'" *Memo Money Order Co. v. Davis (In re Davis)*, 371 B.R. 127, 135 (Bankr. E.D.N.C. 2007) (citing *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 WL 150278, at *3 (4th Cir. Mar. 19, 1999) (unpublished)). Therefore, "[t]he fiduciary relationship, contemplated by § 523(a)(4), does not exist where an express or technical trust has not been established prior to the alleged misappropriation of funds." *Camp Flintlock, Inc. v. Stephenson (In re Stephenson)*, Adv. Pro. No. 12-00228, 2013 WL 593900, at *5 (Bankr. E.D.N.C. Feb. 15, 2013) (citing *Davis*, 371 B.R. at 135 (additional citations omitted)); *see E. Skateboard Supply, Inc. v. Ponos (In re Ponos)*, Adv. Pro. No. 13-00014-8-ATS, 2013 WL 5681067, at *3 (Bankr. E.D.N.C. Oct. 18, 2013), *mot to reconsider allowed on other grounds*, Dkt. 43 (Bankr. E.D.N.C. Feb. 5, 2014); *see also Keener Lumber Co. v. Perry (In re Perry)*, Adv. Pro. No. 02-00007-5-ATS, at 7

(Bankr. E.D.N.C. Oct. 7, 2002) (emphasizing "that 523(a)(4) requires an explicit trust, whether created by agreement or by statute . . . ."). A "technical trust," in turn, may only be created by agreement between the parties or by a statute that specifically imposes fiduciary obligations. *See Ronk v. Maresh (In re Maresh)*, 277 B.R. 339 (Bankr. N.D. Ohio 2001); *Peoples Bank & Trust Co. of Hazard v. Penick (In re Penick)*, 199 B.R. 16 (Bankr. E.D. Ky. 1996).

This narrow interpretation is in keeping with the existing precedent in the United States Court of Appeals for the Fourth Circuit. In *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 496 n.5 (4th Cir. 2008), the court observed that

> . . . This court has not yet had the opportunity to determine, in a published opinion, the proper contours of the term "fiduciary" as used in § 523(a)(4). *But see Harrell v. Merchant's Express Money Order Co. (In re Harrell),* 173 F.3d 850, 1999 WL 150278, at *3 (4th Cir. 1999) (unpublished table decision) (holding that "under [§523(a)(4)], a fiduciary is limited to instances involving express or technical trusts"). Here, the dispute concerns only whether an express trust was created, which, as both parties acknowledge, is clearly sufficient to establish a fiduciary relationship for the purposes of § 523(a)(4). *See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333-34, 55 S. Ct. 151, 79 L. Ed. 393 (1934). Thus, because the reach of the term "fiduciary" is not squarely presented here, we decline to elaborate on the question further.

524 F.3d at 496 n.5.

In its complaint, Federal has not alleged that the parties executed a trust agreement or that a statutory duty exists. Instead, it primarily relies on three cases to support its position that the jury verdict and the facts it has alleged establish Mr. Sorge as a fiduciary for purposes of § 523(a)(4). First, Federal cites to *Hamby v. St. Paul Mercury Indem. Co.*, 217 F.2d 78 (4th Cir. 1954), in which the court affirmed the exception from discharge of a debt where the debtor misappropriated funds entrusted to him by a real estate purchaser for a specific purpose. There, the court found that the real estate agent was a fiduciary, as "to hold otherwise . . . would be to narrow unreasonably the broad language used by Congress in denying discharge where there has been misappropriation by

13

a bankruptcy while acting 'in *any* fiduciary capacity.'" 217 F.2d at 80 (emphasis in original). Notably, the predecessor to § 523(a)(4) in effect at the time used the words "in *any* fiduciary capacity." Not only does the current statute not include the word "any," but as described above, the statute is now construed more narrowly.

Next, Federal relies upon *Compugraphic Corp. v. Golden (In re Golden)*, 54 B.R. 957 (Bankr. D. Mass. 1985). In *Golden*, the debtor was the manager of Compugraphic's corporation information systems department with broad discretion to spend in excess of $10 million of corporate funds. 54 B.R. at 958. The employer contended that the debtor received kickbacks from an outside contractor while also utilizing the same contractor for his work at Compugraphic. The court found that the debtor "occupied a position of trust, was in control of corporate property, and was given responsibility for the maintenance and disbursement of corporate funds to vendors," that he misapplied substantial amounts of the $10 million he received for use in the information systems department, that some of those funds were returned to him as kickbacks, and that he "was only able to set this train of events . . . because of the level of his authority in Compugraphic and confidence and trust that the company placed in him." 54 B.R. at 964. The court concluded that the debtor, "by taking kickbacks in the form of a secret consulting job with one of his major vendors engaged in a defalcation while acting in a fiduciary capacity." *Id.*

*Golden* appears to have analogous facts to this case, but it has been criticized or distinguished in circuits with the restrictive reading of § 523(a)(4) that applies here. For example, in *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693 (Bankr. S.D.N.Y. 1998), the court rejected the creditor's reliance on *Golden*:

> Novartis cites *Compugraphic Corp. v. Golden (In re Golden),* 54 B.R. 957, 964 (Bankr. D. Mass. 1985), *American Machinery & Engineering Corp. v. Entrekin (In re Entrekin),* 40 B.R. 435, 436 (Bankr. S.D. Fla. 1984) and *Trevor Steel Company*

14

>*v. Eisner (In re Eisner)*, 35 B.R. 86 (Bankr. N.D. Ohio 1983) for the proposition that "fiduciary capacity" within the meaning of § 523(a)(4) may be found in an employment relationship where the employee has access to control over disbursement of corporate funds. I disagree with this proposition as it has overbroad implications and does not comport with the standards as discussed in *In re Zoldan* [221 B.R. 79 (Bankr. S.D.N.Y. 1998)] requiring the existence of an express or technical trust. For these reasons I reject the proposition as advocated by Novartis.

221 B.R. at 699.

Similarly, in *Chavez*, 430 B.R. at 897, a bankruptcy court in Arizona refused to deny discharge of a debt under § 523(a)(4) based only on existence of an employer/employee relationship, noting that even with some courts extending the term, "in the end, this court must of course follow the path laid out by the Ninth Circuit. And that path is a conservative one, requiring some sort of actual trust relationship, not just a generalized duty of loyalty." As noted above, the law in the Fourth Circuit takes a similarly narrow view on § 523(a)(4) discharge cases, where the fiduciary capacity exception is "limited to instances involving express or technical trusts." *Strack*, 524 F.3d at 496 n.5.

Finally, even though it did not specifically plead "technical trust" in its complaint, Federal contends that the relationship between it and Mr. Sorge was a technical trust by virtue of Mr. Sorge's having voluntarily accepted trust-like obligations. Federal relies on *LeCann v. Cobham (In re Cobham)*, 551 B.R. 181 (E.D.N.C. 2016). In that case, the plaintiff, a former dental practice business partner of the debtor, obtained and relied upon a state court judgment after trial finding that the defendant "engaged in multiple conflict-of-interest transactions that were unfair to the [dental] practices and that she breached her fiduciary duty by committing constructive fraud on the Practices." 551 B.R. at 186. The bankruptcy court concluded that the debt was nondischargeable under § 523(a)(6), but not under § 523(a)(4). On appeal, the district court held that the bankruptcy court erred in concluding that the state court judgment conclusively found the

15

elements required to except the debt from discharge under § 523(a)(6), but would still deny discharge of the debt under § 523(a)(4) on the alternative basis that the bankruptcy court should have instead applied the state court's findings to establish defalcation while acting in a fiduciary capacity. The district court found that the defendant "voluntarily assumed trust-like obligations under North Carolina law, thus placing her firmly in that category of 'technical' trustees." 551 B.R. at 194. The district court reasoned that because North Carolina law "demands trust-like obligations from corporate directors," the defendant voluntarily accepted those obligations when she became a director of the dental practice corporations, and because the parties had already litigated the defendant's director status and obligations under North Carolina law in state court, the state court's judgment precluded further litigation of her status of a fiduciary under the Bankruptcy Code. *Id.* at 195.

The case was then appealed to the Fourth Circuit, where the discharge exception was upheld on the bankruptcy court's determination that the debt was nondischargeable pursuant to § 523(a)(6). *LeCann v. Cobham (In re Cobham)*, No. 16-1010, 2016 WL 5956692 (4th Cir. Oct. 14, 2016) (per curiam) (unpublished). The appellate court expressed "no view as to the district court's alternative holding with respect to 523(a)(4)." *Id.* Thus, the procedural posture of *Cobham* renders the district court's discussion of § 523(a)(4) nonbinding. Furthermore, in *Cobham* the defendant debtor and plaintiff judgment holder were the only co-owners (essentially partners) of the dental practice professional associations, sharing profits from the businesses and dividing responsibilities. *Cobham* is thus readily distinguishable, because the debtor there was a fifty

16

percent shareholder and operational director of the creditor business, not a mere employee of a sophisticated and huge multi-layered insurance and financial company.[5]

Given the factual distinctions, the procedural posture, and the longstanding narrow interpretation of "fiduciary" under § 523(a)(4), without further alleged facts that if true establish a technical trust, *Cobham* does not support Federal's argument that Mr. Sorge was a fiduciary for purposes of an exception to discharge. Accordingly, and based on the analysis set forth above, the court finds that Federal has not sufficiently pled facts that would establish Mr. Sorge as a fiduciary for purposes of § 523(a)(4) in Count II.

### 2. Embezzlement

While the court has determined that Federal has failed to plead facts sufficient to establish a fiduciary duty for purposes of § 523(a)(4), Federal also contends that the debt should be excepted from discharge under § 523(a)(4) as embezzlement, which does not require fiduciary capacity. *See Humphries v. Martinez (In re Martinez)*, 410 B.R. 847 (Bankr. W.D. Mo. 2008). For actions to rise to the level of "embezzlement" for purposes of § 523(a)(4), the following three elements must be shown:

(i) the creditor entrusted money or property to the debtor;
(ii) the debtor appropriated the money or property for a use other than that for which it was entrusted; and
(iii) the circumstances indicate a fraudulent intent.

*Peavey Electronics Corp. v. Sinchak (In re Sinchak)*, 109 B.R. 273, 276 (Bankr. N.D. Ohio 1990).

The Amended Complaint does not allege specific facts sufficient to establish the essential elements of embezzlement. Instead, it simply makes the conclusory statement that Mr. Sorge's

---

[5] Further, the district court's determination that a director's fiduciary duty under North Carolina law necessarily creates a technical trust as required by § 523(a)(4) is somewhat inconsistent with the law in this circuit as described herein.

acts constitute embezzlement. The court does not have to accept conclusions as true for purposes of Rule 12(b)(6). *See Iqbal*, 129 S. Ct. at 1949 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Federal may be able amend its complaint to allege facts, rather than mere legal conclusions, that, if proven, would establish the debt is one for embezzlement; however, just as Federal relies upon the jury verdict to affirmatively establish its claims, it may also find itself precluded from a finding of embezzlement with respect to the Fiduciary Claims due to the absence of a jury finding of fraud. That matter, however, is for another day.

**D.     Count III: Constructive Trust Contingent Upon the District Court's Actions**

Count III alleges that, as a faithless servant, Mr. Sorge forfeited all compensation paid to him between March 2005 and August 2011, and that all funds and other assets derived from or traceable to said compensation or fraud or breach of fiduciary duty are held in a constructive trust for Federal's benefit. Dkt. 3 at ¶ 49. Mr. Sorge's motion to dismiss contends that constructive trust was not raised in the New York Action, and that the statute of limitations has expired with respect to those claims. As mentioned above, at the hearing the parties agreed that this court should not consider the motion to dismiss until the New York court entered judgment. However, the New York Order has since been entered and it addresses this issue, in part. The New York Order (to which Mr. Sorge stipulated) finds that, based on the jury's findings on fiduciary breach, Mr. Sorge was a faithless servant, identifies the dates during which he was a faithless servant, and sets forth the amount of compensation Mr. Sorge received from Federal during that time. It is the court's understanding that the constructive trust sought by Federal, rather than an independent cause of action, is a remedy for the finding of faithless servant. Presumably, the New York court will make that clear when it enters its judgment.

Accordingly, the motion to dismiss Count III is denied; however, if a basis to renew the motion arises upon entry of the judgment in New York, this order is without prejudice.

### E. Count IV: Non-Exempt Assets

Count IV is tied to Count III. In essence, Federal requests a determination that to the extent any of Mr. Sorge's funds are held in constructive trust for the benefit of Federal, those funds are not property of the estate and are not exempt. The claim is sufficiently pled for purposes of Rule 12(b)(6). No ruling on the merits is appropriate at this stage of the proceedings, and a determination as to whether the funds are property of the estate or exempt cannot be made until the New York judgment is entered and Count III is determined. Accordingly, the motion to dismiss Count IV is denied.

## CONCLUSION

Based on the foregoing:

1. The motion to dismiss Counts I, III, and IV is DENIED except to the extent Count I asserts an alternative objection to the discharge of the Fraud Debt under 11 U.S.C. § 523(a)(4), which alternative claim is dismissed.

2. The motion to dismiss Count II is ALLOWED.

3. Federal is hereby granted leave to amend and may, if it chooses, file a second amended complaint with respect to its claims under 11 U.S.C. § 523(a)(4) within thirty (30) days of the date of this order.

4. If Federal files a second amended complaint, the defendant shall have twenty-one (21) days to file a responsive pleading.

**END OF DOCUMENT**